Argued April 6, reversed April 24, rehearing denied May 29, 1917.

## BLAKNEY *v.* ROWELL.

(164 Pac. 709.)

**Exchange of Property—Evidence—Sufficiency.**

1. In a suit to rescind an exchange of property, including the assignment by defendants to plaintiffs of the lease of an apartment house, evidence *held* to show that the defendants in operating the apartment house received on an average of $150 a month over all expenses during the time they occupied the premises, so that their representation to that effect was not false.

**Exchange of Property—Warranty.**

2. A representation that defendants in operating the apartment house had received on an average of $150 over all expenses during

the time they occupied the premises was not a guaranty that the net income which the plaintiffs would receive in operating the apartment house would be $150 a month, or any other sum.

**Exchange of Property—Warranty.**

3. If defendants, who, pursuant to an agreement for the exchange of property, assigned their lease of an apartment house to the plaintiffs, warranted that plaintiffs would receive a net gain of $150 a month if they kept the rooms well filled, defendants were not liable for the loss resulting from plaintiffs' inability to keep the rooms well filled.

[As to damages for breach of warranty of title on exchange of land, see note in 24 Am. St. Rep. 268.]

From Multnomah: ROBERT G. MORROW, Judge.

Department 2. Statement by MR. JUSTICE MOORE.

This is a suit to set aside a bill of sale, to cancel a promissory note and a chattel mortgage, and to recover the consideration given for personal property and the assignment of a lease. The defendant, Mary C. Rowell, and her husband W. W. Rowell, now deceased, on December 27, 1913, assigned to the plaintiffs, Earl A. Blakney and Lena M. Blakney, his wife, a lease of a house in Portland, Oregon, known as the "Nordica Apartments," having fifty rooms, and also transferred to them all the furniture, etc., therein for the expressed consideration of $4,000, for which plaintiffs executed to Mr. Rowell a deed for five acres of land in Washington County, Oregon, valued at $1,250, and gave to Mr. and Mrs. Rowell their promissory note for $2,500, secured by a chattel mortgage of such personal property, which household goods were accepted subject to a prior mortgage of $250, the payment of which the plaintiffs assumed. They took possession of the house December 29, 1913, and on the 9th of the next month paid on their note $500, and later $106.65 on the prior mortgage. This suit was commenced January 28, 1915, and four days thereafter the plaintiffs abandoned

the premises, whereupon Mrs. Rowell took possession and subsequently foreclosed the larger chattel mortgage, purchasing the goods at a public sale thereof February 15, 1915, for $1,750, and indorsing that sum on the plaintiffs' promissory note. The complaint charges that the assignment of the lease and the transfer of the personal property were brought about by the knowingly false and fraudulent representations of Mr. and Mrs. Rowell, particularly specifying them, which statements the plaintiffs believed, and relying thereon were deceived to their damage.

The answer denied the charge, and for a further defense averred that prior to purchasing the property the plaintiffs carefully inspected the furniture, considered the extent of the business, and relied upon their own judgment as to the value thereof.

The reply controverted the allegations of new matter in the answer, and the cause being tried resulted in a decree permitting the defendants to keep, as compensation for the use of the property, the money which had been paid, requiring them to reconvey the five-acre tract mentioned, and also to cancel and surrender the promissory note and chattel mortgage; and they appeal.                    REVERSED.   SUIT DISMISSED.

REHEARING DENIED.


For appellants there was a brief over the names of *Mr. Albert H. Tanner* and *Mr. John Van Zante,* with an oral argument by *Mr. Tanner.*

For respondents there was a brief over the names of *Mr. Barnett H. Goldstein* and *Messrs. Joseph & Haney,* with an oral argument by *Mr. Goldstein.*

MR. JUSTICE MOORE delivered the opinion of the court.

The testimony given at the trial shows that prior to December 27, 1913, the plaintiffs were living in the vicinity of the "Nordica Apartments," and having a general knowledge of its patronage they, desiring to secure the house and furniture, sought an interview with Mrs. Rowell, who informed them that during the preceding year the income from the rooms had been $150 a month in excess of all the expenses, and the plaintiffs were assured that if they purchased the property they would have no difficulty in obtaining a like monthly sum, if the rooms were kept well occupied. Mrs. Rowell also stated to the plaintiffs that she was then paying for the use of the house $200 a month, but at her request the landlord would reduce the rent $25 a month. Mr. and Mrs. Rowell represented to the plaintiffs that their only reason for assigning the lease and selling the furniture, etc., was a desire to remove to the state of Idaho, where they owned irrigated land which required immediate attention, even if they were obliged to dispose of the rooming-house and its furnishings at a loss. After the sale was consummated neither Mr. Rowell nor his wife went to Idaho, and the evidence discloses that when they transferred the property they were paying only $150 a month rent, though the lease demanded a greater sum, and that no difficulty was encountered in obtaining for the plaintiffs the use of the premises at $175 a month. The plaintiffs, in January, 1914, collected from tenants, $426.70, while the operating expenses during that time were $435.95. They made complaint about such loss to Mr. and Mrs. Rowell, who informed them that the expenses during the spring and summer would not be so great owing to less consumption of fuel and the electric lights

would be used for a shorter time, and that the average profit to be derived from conducting the business should be based on the yearly receipts and disbursements. The collections for the next two months were $504.15 and $438, respectively, while the disbursements for that time were $480.35 and $455.95. In April, 1914, the plaintiffs took in only $293.80, and paid out $292.65. The greatest sum thereafter obtained during any month they occupied the premises was $254.50, while the monthly expenses were not diminished in proportion to the receipts. Mr. Blakney testified that they paid as rent $175 a month for January, February, and March, 1914, $150 a month for the next quarter, and $125 a month for the remainder of the time; that he was generally employed in other business, for which service he received a monthly salary of $60; that his wife collected as the monthly rent of her property $20, which sums were employed in liquidating the expenses of the apartment house; and that during the time they occupied it they made a net profit of $29.

Mrs. Rowell testified that she and her husband purchased the household goods in and took possession of the "Nordica Apartments" March 23, 1911, agreeing to pay therefor $4,500; that they conducted the rooming-house until December 29, 1913, when they turned it over to the plaintiff; that during the 33 months and 6 days in which they were engaged in that business they made a net profit therefrom of $5,000, or a monthly average gain of $150; that they kept no books, but of the sum of money so received they paid off an indebtedness of $3,000, expended on their Idaho lands $1,108.74, discharged taxes in that state and in Oregon and street assessments in Portland in the latter state, amounting to $562.67, and also paid for wearing apparel, fraternal insurance, and other obligations. Mrs. Rowell

further testified that when they disposed of the apartment house they expected to remove to Idaho, but later altered their plans and rented a farm in the Willamette Valley. She also stated upon oath that though they were paying only $150 a month rent when the furniture was sold to the plaintiffs, the lease demanded a greater sum, and the remainder was to have been paid when the business of the apartment house improved. In this particular she is corroborated by the testimony of the landlord's agent who collected the rent.

The testimony of several real estate brokers, who were engaged in negotiating sales and exchanges of rooming-houses and their contents, is to the effect that during the year 1913, Mr. Rowell listed with them for sale or exchange an assignment of the lease of the "Nordica Apartments" and a transfer of the furnishings therein at valuations much less than the purchase price received from the plaintiffs, such owner then saying to each agent that the business in which he and his wife were engaged did not pay.

Other witnesses impute to Mr. and Mrs. Rowell remarks which it is asserted they made about the plaintiffs, such as: "They could not succeed in operating the lodging-house unless they had other income"; "they could not expect to hold possession of the property very long and would be obliged to give it up when the chattel mortgage was foreclosed"; and in referring to the purchasers of the goods and to the price which they paid: "The suckers are not all dead yet." Mrs. Rowell denied the comments attributed to her, but her husband having died the expressions ascribed to him were unchallenged. She, at plaintiff's request, tried for some time to secure for them a purchaser of the personal property, but was unable to do so. It was asserted by a witness that Mrs. Rowell directed Mrs.

Blakney to say to persons visiting the apartment house with a view of inquiring about or buying the furniture therein that the business was prosperous.

1, 2. The evidence shows that when all the rooms in the "Nordica Apartments" were filled, $461 a month could be realized from the regular occupants if they paid the sums demanded, and that from $6 to $12 were usually received from transient customers. It is believed the evidence clearly establishes the fact that Mr. and Mrs. Rowell, in operating the apartment house, received on an average $150 a month over all expenses during the time they occupied the premises, so that their representation to that effect was not false. It is quite probable, however, that for a part of the year 1913 the business was not conducted at a great profit, which fact seems fairly inferable from the reduction in the rent of $50 a month, which was granted by the landlord. We have not been able to find, from a careful examination of the testimony, any guaranty given by Mr. or Mrs. Rowell that the net income which the plaintiffs would receive should be $150 a month or any other sum.

In the case at bar the representations made by Mrs. Rowell to the plaintiffs were to the effect that if they could keep the apartment house well filled with tenants, $150 a month could be made in excess of the expenses. Mr. Blakney, referring to the representations made by Mr. Rowell, testified as follows:

"He said they always made money.

"Q. He did not say they made $150 or any definite amount?

"A. No."

The first three months the plaintiffs conducted the business their average receipts were about equal to the sums which they were assured could be obtained.

84 Or.—24

Their expenses, however, were probably much greater than had been incurred by their predecessors. Mr. and Mrs. Blakney were inexperienced in that occupation, and made many repairs to the rooms, putting in some of them new rugs and many other furnishings. Her tenants evidently received better treatment than they had been getting, for one of them, referring to Mrs. Rowell, testified:

"We never had any hot water, and never had any heat; that was, to amount to anything."

3. It is believed that by careful management of the apartment house for the first three months after the plaintiffs took possession a net profit could have been realized from the business equal to that represented. In April, 1914, and thereafter, owing to the great financial depression then prevailing on the Pacific Coast, many tenants in the "Nordica Apartments" left the premises to obtain less expensive quarters, and it was impossible to keep the rooms well filled or to conduct the business at a profit. The assurance of a monthly net gain of $150, if the representation be regarded as a warranty, was made to depend upon the plaintiffs' ability to keep the rooms well filled. The failure in this respect is not chargeable to the defendants, who are not liable for the resulting loss: *Black* v. *Irvin,* 76 Or. 561 (149 Pac. 540).

As sustaining the decree rendered herein the plaintiffs' counsel cite the case of *Koehler* v. *Dennison,* 72 Or. 362 (143 Pac. 653), where it was held that Hull, one of the defendants, who was the plaintiff's agent in securing for his principal a place of business, conspired with Dennison, the other defendant, and represented to the plaintiff that he could obtain from the landlord a lease of the premises, and that such confidential relation having existed between the plaintiff

and Hull, and the latter's confederacy with Dennison in consummating the sale of a barber-shop, rendered them liable to the plaintiff for the loss which he sustained by reason of his failure to secure a lease for more than a month. The statements made by the defendants to the plaintiff of the sums of money which he could daily make by conducting the business, though referred to in the majority opinion, were not considered as anything more than the mere expression of an opinion relating to uncertain future gains and not amounting to a warranty. The decision in that case is not controlling herein: See upon this subject *Hedin* v. *Minneapolis etc. Institute,* 62 Minn. 146 (64 N. W. 158, 54 Am. St. Rep. 628, 35 L. R. A. 417, and notes).

The decree is, therefore, reversed and the suit dismissed.                    REVERSED.   SUIT DISMISSED.
                              REHEARING DENIED.


MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE McCAMANT concur.

---

'Argued May 1, dismissed 15, rehearing denied May 29, 1917.